**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
TRUSTEES OF LABORERS UNION
LOCAL 1298 OF NASSAU AND SUFFOLK
COUNTIES BENEFIT FUNDS,

                        Plaintiffs,                         **REPORT AND
RECOMMENDATION**

      - against -

                                                   CV 09-2649 (JS) (AKT)

MASTER WATERPROOFERS, INC.,

                        Defendant.
----------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.     PRELIMINARY STATEMENT**

      District Judge Seybert has referred this matter to me for issuance of a Report and Recommendation as to whether Plaintiffs' "pending motion [for a default judgment] should be granted, and to determine the appropriate amount of damages, costs and/or fees, if any, to be awarded based upon such determination." DE 7.

      Plaintiffs, Trustees of Laborers Union Local 1298 of Nassau and Suffolk Counties Benefit Funds ("Plaintiffs" or the "Funds"), commenced this action against Master Waterproofers, Inc. ("Defendant" or "Master Waterproofers") for failure to comply with its statutory and contractual obligations to Plaintiffs arising out of two Collective Bargaining Agreements (the "CBAs") entered into between Road and Heavy Construction Laborers' Union Local 1298 of Nassau and Suffolk Counties (the "Union") and Master Waterproofers. The first CBA was effective from June 1, 2003 through May 31, 2007. The second CBA is effective from June 1, 2007 through May 31, 2012. Plaintiffs assert claims for breach of the CBAs in violation

of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.* ("ERISA")
and the Labor Management Relations Act of 1947, 29 U.S.C. §141, *et seq.*[1]

Plaintiffs seek an award of unpaid fringe benefit contributions, interest, liquidated damages, attorney's fees and costs. According to Plaintiffs' unchallenged allegations, the amount owed, including principal contributions, interest, liquidated damages, attorney's fees and costs totals $136,119.59. *See* Pls.' Request for Entry of Default Judgment [DE 3]; Pls.' Statement of Damages [DE 5].

Based upon the information submitted by Plaintiffs and for the reasons set forth below, the Court finds that Plaintiffs are entitled to the relief requested in their motion. I therefore respectfully recommend to Judge Seybert that default judgment be entered against Defendant and that damages be awarded to Plaintiffs as follows: (1) $102,865.08 for unpaid fringe benefits; (2) $10,286.51 in interest on the unpaid fringe benefits; (3) $20,573.00 in liquidated damages; (4) $2,000.00 for attorney's fees; and (5) $395.00 for court costs and disbursements, for a total sum of $136,119.59.

**II.    BACKGROUND**

This action was commenced in June 2009 by the Trustees of the Funds. The Funds are jointly administered multi-employer, labor-management trust funds established and maintained pursuant to the Taft-Hartley Act, 29 U.S.C. § 186(c)(5), and are multi-employer employee benefit plans within the meaning of ERISA, 29 U.S.C § 1002(1), (2) and (37)(a). *See* Compl. [DE 1],

---

[1]    In the Complaint, Plaintiffs also seek "a permanent injunction enjoining the Employer from any further or future violations of this or subsequent collective bargaining agreements with plaintiff Union, as such agreements apply to the obligations of Employer to Plaintiffs herein." Compl., ¶ 33. Plaintiffs do not, however, raise the issue of injunctive relief in their subsequent submissions and do not provide any support for such claim. Accordingly, the Court will not address Plaintiffs' claim for injunctive relief in this Report and Recommendation.

¶ 5. Defendant Master Waterproofers is a New York corporation authorized to do business in New York. *Id.*, ¶ 10. Defendant is an "employer" as that term is defined in Sections 3(5) and 515 of ERISA, 29 U.S.C. §§ 1002(5), 1145, and is contractually obligated to make contributions to the Funds for work performed by covered employees. *Id.*, ¶ 9. Pursuant to Article VI of the CBAs, Defendant was required to make fringe benefit contributions to the Funds in specified amounts based upon the hours worked by the employees covered under the CBA. *See* Aff. of Frank Damiano, Jr.[2] in Supp. of Pls.' Mot. for Default Judgment [DE 8] ("Damiano Aff. [DE 8]"), ¶¶ 2, 3; Aff. of Frank Damiano, Jr. in Supp. of Pls.' Application for Damages [DE 10], ("Damiano Aff. [DE 10]"), ¶¶ 2, 3. A copy of the earlier CBA is annexed as Exhibit A to the Damiano Affidavit [DE 10]. Copies of the CBA and the Fund's Collection Policy are annexed as Exhibits A and B, respectively, to the Damiano Affidavit [DE 8]. Plaintiffs allege that between June 1, 2006 and June 30, 2009,[3] Defendant failed to make fringe benefit contributions for work performed by covered employees under the terms of the CBA. Damiano Aff. [DE 10]. ¶ 5; Damiano Aff. [DE 10], ¶ 5.

Plaintiffs filed this action on June 22, 2009. The Summons and Complaint were served on Defendant on July 10, 2009. *See* Affirm. of Danielle Carney, Esq. in Supp. of Pls.' Mot. for

---

[2]  Mr. Damiano is the Fund Manager of the Local 1298 Benefit Funds. *See* DE 8, ¶ 1.

[3]  In the Complaint, Plaintiffs allege that Defendant owed outstanding fringe benefit contributions under the CBA "for the period January 26, 2009 through June 18, 2009 and continuing." Compl., ¶ 14. However, in all subsequent papers submitted to the Court, Plaintiffs assert that the time period at issue here is June 1, 2006 through June 30, 2009. *See, e.g.*, Affirm. of Danielle Carney, Esq. in Supp. of Pls.' Mot. for Default Judgment [DE 4], ¶ 7; Damiano Aff., ¶ 5. Accordingly, the Court understands the date range alleged in Paragraph 14 of the Complaint to have been an error and that the date range for which Plaintiffs are seeking payment, as also supported by the audit of Certified Public Accountants Wagner & Zwerman LLP [DE 4, Ex. 1], is June 1, 2006 through June 30, 2009.

Default Judgment [DE 4] ("Carney Affirm."), ¶ 5. Plaintiffs filed proof of service with the Clerk of this Court on July 21, 2009. *See* DE 2. The deadline for Defendant to answer or move with respect to the Complaint was July 30, 2009, and Defendant did not request an extension of this deadline. *See id.* Further, Defendant did not file an answer or move in connection with the Complaint by July 30, 2009. To date, Defendant still has not done so. By Motion dated October 7, 2009, Plaintiffs moved for entry of a default judgment. *See* DE 3-5. On the same date, Plaintiffs served a copy of the motion for default judgment on Defendant by first class mail. *See* DE 5-3. On October 8, 2009, the Clerk of this Court noted the default and entered a Certificate verifying "that the docket entries indicate that the defendant has not filed an answer or otherwise moved with respect to the complaint herein." *See* DE 6. Copies of the Clerk's Certificate were mailed to all parties on the same date. *See id.*

On October 17, 2009, Judge Seybert issued an Order referring this matter to me to determine whether (1) Plaintiffs are entitled to entry of a default judgment against Defendant and (2) if so, the appropriate amount of damages, costs and/or fees, if any, to be awarded based upon such determination. *See* DE 7. Following Judge Seybert's referral, Plaintiffs submitted documents in further support of their motion for default judgment and award of damages.

Counsel for Plaintiffs have submitted the following documents:

- the Complaint [DE 1];

- Affidavit of Service confirming that the Summons and Complaint were served on Defendant July 10, 2009 [DE 2];

- Clerk's Certificate of Default [DE 6];

- Affirmation of Danielle M. Carney, Esq. in Support of Plaintiff's Motion for Default Judgment [DE 4];

4

- Wagner & Zwerman LLP, Certified Public Accountants' Compliance Audit Report for Master Waterproofers with a Schedule of Fringe Benefits Due annual for the period covering June 1, 2006 through June 30, 2009 [DE 4, Ex. 1];

- Invoice from Capital Process Servers, Inc. dated July 13, 2009 [DE 4, Ex. 2];

- Plaintiff's Statement of Damages [DE 5];

- Affidavits of Frank Damiano, Jr., Fund Manager, in Support of Plaintiff's Application for Damages [DE 8, 10];

- Collective Bargaining Agreement between Laborers' Union Local No. 1298 and the Long Island Contractors Association, Inc., effective June 1, 2003 through May 31, 2007 [DE 10, Ex. 1]

- Collective Bargaining Agreement between Laborers' Union Local No. 1298 and the Long Island Contractors Association, Inc., effect I've June 1, 2007 through May 31, 2012 [DE 8, Ex. A]

- Laborers' Union Local No. 1298 Benefit Funds' Policy for Collection of Delinquent Contributions [DE 8, Ex. B]; and

- Attorney Fees Affirmations of Danielle M. Carney, Esq. [DE 9, 11].

## III. DISCUSSION

### A. Default Judgment

A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed to be true. *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06 CV 1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing, *inter alia*, *Greyhound Exhibitgroup, Inc. v. E.I.U.I. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993)). A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability. *See Garden City Boxing Club, Inc. v. Morales*, No. 05 CV 0064, 2005 WL 2476264, at *3 (E.D.N.Y. Oct. 7, 2005) (citing *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995)). The only question

remaining, then, is whether Plaintiffs have provided adequate support for the relief sought. *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158.

For a movant to obtain a default judgment, it must complete a two-step process. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a) (quoted in *FashionTV.com GMBH v. Hew*, No. 06 cv 3200, 2007 WL 2363694, at *2 (S.D.N.Y. Aug. 17, 2007)). Once the clerk's certificate of default is issued, the moving party may then make application for entry of a default judgment, pursuant to Rule 55(b), as Plaintiffs have done here. *See Kiewit Constructors, Inc. v. Franbuilt, Inc.,* 07-CV-121A, 2007 WL 4405029 at *2 (W.D.N.Y. Dec. 14, 2007); *FashionTV.com GMBH*, 2007 WL 2363694, at *2. The Clerk of the Court noted Defendant Master Waterproofers' default but has not entered judgment for Plaintiffs.

On a motion for default judgment, the Court considers the following three factors: "1) whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.,* No. 02 Civ. 9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003) (citation omitted). Disposition of motions for default judgment "are left to the sound discretion of the district court." *Id*. (quoting *Shah v. New York State Dep't of Civil Serv*., 168 F.3d 610, 615 (2d Cir. 1999)).

As to the first factor, Defendant's failure to respond to the Complaint sufficiently demonstrates willfulness. *See, e.g., Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No.

07 Civ. 6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007). In the instant case, it is undisputed that Defendant was properly served with the Complaint and that Defendant failed to respond to the Complaint.

Regarding the second factor, the Court is unable to determine whether Master Waterproofers has a meritorious a defense to Plaintiffs' allegations because it has not presented any defense to the Court. Hence, where no defense has been presented and, "[w]here, as here, 'the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Chen v. Jenna Lane, Inc.,* 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) (quoting 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2688 at 58-59 (3d ed. 1998)). In the Complaint (in which the allegations in which are deemed admitted in light of Defendant's default), Plaintiffs assert that Defendant has failed to make required fringe benefit contributions as required under the CBA, and such undisputed allegations support Plaintiffs' request for the entry of judgment in the amount requested. *See Indymac Bank*, 2007 WL 4468652, at *1. Likewise, the claims stated by Plaintiffs, taken as true, constitute a viable cause of action.

The final factor to be considered is whether the non-defaulting party would suffer as a result of a denial of the motion for default. The Court finds that Plaintiffs would be prejudiced if the instant motion were to be denied. Defendant has willfully defaulted and has failed to make required fringe benefit contributions under the CBA. There is no just cause for delaying entry of judgment. Accordingly, I respectfully recommend to Judge Seybert that Plaintiffs' motion for default judgment be GRANTED, and that a default judgment be entered against Defendant.

## B. Damages

Having recommended that Plaintiffs' motion for default judgment be granted, the Court now turns to ascertaining the amount of damages owed to Plaintiffs. Although "a defendant's default is deemed to constitute his admission of all well-pleaded allegations of liability," *Trustees of the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr.*, No. 05 CV 1665, 2007 WL 3124612, at *9 (E.D.N.Y. Oct. 23, 2007) (citations omitted), the Court must still "conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 160 (E.D.N.Y. 2008) (citations omitted). "The Second Circuit has approved the holding of an inquest by affidavit, without a hearing, 'as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment.'" *Id*. (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 1009 F.3d 105, 1111 (2d Cir. 1997)).

Plaintiffs submitted the following documents in support of their request for an award of damages: the Affirmation of Danielle Carney [DE 4], outside counsel for Plaintiffs, which includes a Statement of Attorney's Fees and a Statement of Damages [DE 5]; the Affidavits of Frank Damiano, Jr., Fund Manager of the Funds [DE 8, 10], to which exhibits are annexed, including (1) the CBA in effect from June 1, 2003 through May 31, 2007 [DE 10, Ex. 1], (2) the CBA in effect from June 1, 2007 through May 31, 2010 [DE 8, Ex. A], and (3) the Funds' Collection Policy [DE 8, Ex. B]; and the follow-up Affirmations of Danielle Carney in further support of Plaintiffs' request for costs and fees [DE 9, 11]. The Court finds Plaintiffs' submissions to be sufficient evidence to form the basis for an award of damages. The following discussion assesses the amount of damages to which Plaintiffs are entitled based upon the

8

information set forth in Plaintiffs' submissions and evaluated by the Court.

Plaintiffs seek to recover damages in the amounts of $102,865.08 for unpaid fringe benefits, $10,286.51 in interest on the unpaid fringe benefits, $20,573.00 in liquidated damages, $2,000.00 in attorney's fees, and $395.00 for costs, for a total sum of $136,119.59.

### *1. Principal*

Plaintiffs seek to recover unpaid fringe benefits earned by the covered Union employees under the CBAs between June 1, 2006 and June 30, 2009. Plaintiffs allege that Defendant entered into the CBAs, was required to make certain contributions in accordance with the terms of that agreement, and failed to do so. In light of Defendant's default, these allegations are accepted as true and Defendant is liable for the unpaid fringe benefits.

Plaintiffs request unpaid fringe benefit contributions in the amount of $102,865.08. In support of this request, Plaintiffs submitted a September 2009 Audit Report performed by CPAs hired by Plaintiffs pursuant to the CBA. *See* DE 4, Ex. 1. The Audit Report covers the period June 1, 2006 through June 30, 2009 and lists the procedures followed by the auditor as well as subsequent findings. The Audit Report also contains (1) charts entitled "Audit Worksheets" for 2006, 2007, 2008 and the first half of 2009, which list each Union member for whom fringe benefits are owed and which calculate the number of hours for which benefits are owed (*i.e.*, the number of hours worked by the employee that Defendant did not report to the Funds); and (2) charts entitled "Summary of Deficiencies" for 2006, 2007, 2008 and the first half of 2009, which list each Union member for whom fringe benefits are owed and a monthly breakdown of the number of hours for which contributions are owed (based upon the Audit Worksheets), the

rates at which the contributions are owed, and a calculation of the total amount of unpaid benefits.

The Court's review of the records submitted by Plaintiffs reveals that the amount of delinquent fringe benefit contributions is $102,865.08, which Defendant has not paid despite its contractual obligation to do so. Accordingly, I respectfully recommend to Judge Seybert that damages be awarded in favor of Plaintiffs in the amount of $102,865.08 for unpaid fringe benefit contributions.

### 2. *Interest On Unpaid Contributions*

Under ERISA, the Funds are entitled to recover interest on unpaid fringe benefit contributions at "the rate provided under the plan, or if none, 'the rate prescribed under section 6621 of Title 26.'" *Cement & Concrete Workers Dist. Council Welfare Fund v. Azzarone Contracting Corp.,* No. 06 CV 2953, 2007 WL 2712314 at *3 n.4 (E.D.N.Y. Sept. 13, 2007) (quoting 29 U.S.C. § 1132(g)(2)). Here, Plaintiffs contend they are entitled to interest at a rate of ten percent per month on the outstanding and unpaid fringe benefit contributions. *See* Carney Aff. [DE 4], ¶ 8; Damiano Aff. [DE 8], ¶ 4; Damiano Aff. [DE 10], ¶ 4. That assertion is supported by Article VI of the CBAs, which provides, in pertinent part, as follows:

> If the Trustees or Fund Administrator of the Benefit Funds
> is required to utilize the services of an attorney to collect
> employer delinquencies or the services of an accountant to
> conduct an audit of the employer's books and records as the
> result of the employer's delinquency, the delinquent employer
> may be required to pay, in addition to the delinquency, interest
> at the rate of ten percent (10%) per annum . . . in accordance
> with ERISA Section 502(g).

Damiano Aff. [DE 8], Ex. A at 26; Damiano Aff. [DE 10], Ex. A at 23. Using the principal amount of $102,865.08, Plaintiffs calculate the interest owed for the period June 1, 2006 through

June 30, 2009 to be $10,286.51, and the Court finds such calculations to be correct and in accordance with the terms of the CBA. Accordingly, I respectfully recommend to Judge Seybert that Plaintiffs be awarded interest on the delinquent benefit contributions in the amount of $10,286.51.

### 3. *Liquidated Damages*

Plaintiffs also seek an award of liquidated damages as contemplated by the CBA and ERISA. Plaintiffs are entitled to liquidated damages "in an amount not in excess of 20 percent of the principal amount due," pursuant to 29 U.S.C. § 1132(g)(2)(c). *See Cement & Concrete Workers Dist. Council Welfare Fund*, 2007 WL 2712314, at *3.[4] The Funds' Policy for Collection of Delinquent Contributions provides that for delinquent contributions, "the Board of Trustees may assess liquidated damages which shall be calculated from the date due, and shall become due and owing if a lawsuit is commenced." Damiano Aff., Ex. B, § 6(1). The Policy further provides that "[t]he amount of liquidated damages shall be the greater of: (a) interest on the delinquent contributions determined in accordance with Section 2, paragraph 2; or (b) twenty percent (20%) of the delinquent amount." *Id*. The Court notes that the Union Trustee and the Employer Trustee signed off on the Policy for Collection of Delinquent Contributions in January 2010. *See* DE 8, Ex. B. Here, interest on the outstanding contributions is calculated at 10%, and therefore, liquidated damages should be calculated under subsection (b) at 20%.

As discussed above, the principal amount of unpaid fringe benefits is $102,865.08. Plaintiffs request an award of liquidated damages in the amount of $20,573.00. This amount is

---

[4] Specifically, the statute provides that Plaintiffs are entitled to liquidated damages in "an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C).

11

reflected in the Carney Affirmation [DE 4], Plaintiffs' Statement of Damages [DE 5], and the Damiano Affidavit [DE 8]. Accordingly I respectfully recommend to Judge Seybert that Plaintiffs be awarded liquidated damages in the sum of $20,573.00 (or 20% of $102,865.08).

### 4. *Attorney's Fees and Costs*

Plaintiffs seek reimbursement for attorney's fees and costs. "An award of costs and reasonable attorney's fees, in an action such as this to recover unpaid union fringe benefit contributions is mandatory." *Mason Tenders Dist. Council Welfare Fund. v. A.G.I., Inc.,* No. 03 Civ. 1238, 2005 WL 1565831, at *6 (S.D.N.Y. June 8, 2005) (citing, *inter alia* 29 U.S.C. § 1132(g)(2)). First, Plaintiffs seek costs and disbursements in the amount of $395.00. Courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987) (citation omitted). Here, Plaintiffs' request for costs and disbursements consists of $350 paid to the Clerk of this Court for the filing fee in this action, and $45 paid to a process server for service of the Summons and Complaint upon Defendant. *See* Carney Aff. [DE 4], ¶ 8 & Ex. 2. The Court finds that these costs were incurred by Plaintiffs in connection with the filing and service of the Complaint in this action and that appropriate supporting documentation has been provided. Accordingly, I respectfully recommend to Judge Seybert that Plaintiffs be awarded costs in the amount of $395.

Secondly, Plaintiffs request attorney's fees in the amount of $2000. Courts within the Second Circuit determine attorney's fees in federal litigation according to a standard of a "presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County*

*of Albany*, 522 F.3d 182, 183, 189 (2d Cir. 2007), *amending* 493 F. 3d 110 (2d Cir. 2007).³ This number should represent "what a reasonable, paying client would be willing to pay" for legal services rendered, and a court should consider the following factors in its calculation:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether the attorney had an interest (independent of that of his client) in achieving the ends of the litigation or initiated the representation himself, whether the attorney was initially acting *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) the attorney expected from the representation.

*Id.* at 184, 190.

The "presumptively reasonable fee" is comprised of a "reasonable hourly rate multiplied by a reasonable number of expended hours." *Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d at 164 (citations omitted). "The party seeking reimbursement of attorney's fees must demonstrate the reasonableness and necessity of hours spent and rates charged." *Id.* (citing *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983)).

To determine reasonable hourly rates, the Court must refer to "the prevailing [market rates] in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). The Court must also consider the factors enumerated by the Fifth Circuit in *Johnson v. Georgia Highway*

---

³ The Second Circuit has recommended abandoning the term "lodestar" as its meaning has "shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness." *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 189.

*Express, Inc.*,488 F.2d 714 (5th Cir. 1974)[4] and remain mindful that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190.

Generally, "hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants." *Said v. SBS Elecs, Inc.*, No. CV 08-3067, 2010 WL 1265186, at *10 (E.D.N.Y. Feb. 24, 2010) (quoting *Fuchs v. Tara Gen. Contracting, Inc.*, No. CV 06-1282, 2009 WL 3756655, at *2 (E.D.N.Y. Nov. 3, 2009); *see also Finkel v. Tripe A Group, Inc.*, No. 07-CV-2653, 2010 WL 1688359, at *3 (Apr. 27, 2010) (in delinquent contribution case under ERISA, the court found attorney's hourly rates ranging from $200 to $225 to be reasonable); *Gesualdi v. Mack Excavation & Trailer Serv., Inc.*, No. 09-CV-2502, 2010 WL 985294, at *3 (E.D.N.Y. Mar. 15, 2010) (awarding attorney's fees based upon $275 hourly rate in ERISA default judgment action based upon counsel's 40 years of legal experience and ERISA expertise); *Cho v. Koam Med. Servs. PC*, 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007) (awarding fees in FLSA and New York Labor Law case based on $250 hourly rate for partner, $150 hourly rate for associate, and $75 hourly rate for legal assistant)); *Corbett v. Reliance Moving & Storage, Inc.*, No. 1:00-cv-07656, 2007 U.S. Dist. LEXIS 96747, at *13-*15 (E.D.N.Y. May 30, 2007) (awarding an hourly rate of $250 per partner, $200 per senior associate,

---

[4] The *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitation imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Johnson*, 488 F.2d at 717-19.

$150 per junior associate); *T & M Meat Fair, Inc. v. United Food and Commercial Workers, Local 174,* No. 00 Civ. 7968, 2002 WL 31202711, at *4 (S.D.N.Y. Sept. 25, 2002) (plaintiffs' counsel's hourly rate of $250 held reasonable in ERISA case).

To determine whether the number of hours spent by Plaintiffs' counsel was reasonable, the Court must "use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case." *Fox Indus., Inc. v. Gurovich*, No. CV 03-5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). A court should "exclude hours that were 'excessive, redundant, or otherwise unnecessary' to the litigation . . . ." *Cho*, 524 F. Supp. 2d at 209 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "In lieu of making minute adjustments to individual timekeeping entries, a court may make across-the-board percentage cuts in the number of hours claimed, 'as a practical means of trimming fat from a fee application.'" *Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048, 2007 WL 1373118, at *5 (S.D.N.Y. May 8, 2007) (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987)).

A party seeking an award of attorney's fees bears the burden to document "the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflected, for each attorney and legal assistant, the date, the hours expended, and the nature of the work done." *Cho*, 524 F. Supp.2d at 209 (internal citations, quotation marks, and alteration omitted). In the instant case, in support of the request for attorney's fees, Plaintiffs' counsel, Danielle Carney submitted an Affirmation in which she set forth her professional background and hourly rate. *See* Carney Affirm. [DE 9], ¶¶ 1, 4, 6. Earlier in this action, Carney

submitted an Affirmation which includes a statement of attorney's fees, in which counsel describes the tasks performed on behalf of Plaintiffs in connection with this case and the amount of time he spent on each task. *See* Carney Affirm. [DE 4], ¶ 12. Carney subsequently submitted an additional Affirmation, to which a copy of her contemporaneous time records was annexed. *See* Carney Affirm. [DE 11], Ex. A. Counsel's hourly rate for this work is $200 and counsel spent a total of 10 hours on tasks related to prosecution of this action on behalf of Plaintiffs, for a total of $2,000. *See* Carney Affirm. [DE 4], ¶ 12; Carney Affirm. [DE 9], ¶ 6; Carney Affirm. [DE 11], Ex. A. Based upon the documentation provided to the Court, I find counsel's hourly rate to be reasonable, and such rate is well within the parameters found reasonable by other courts in this District, as discussed above. The number of hours expended in bringing this case to resolution, as set forth in counsel's Affirmations, is likewise reasonable.

Accordingly, I respectfully recommend to Judge Seybert that Plaintiffs be awarded the requested attorney's fees in the amount of $2,000, bringing the total award for attorney's fees and costs ($395) to $2,395.

### III.  CONCLUSION

Based upon the foregoing information, I respectfully recommend to Judge Seybert that Plaintiffs' motion for default judgment be GRANTED. I further respectfully recommend that Plaintiffs be awarded damages as follows:

- $102,865.08 for unpaid fringe benefits;
- $10,286.51 in interest on the unpaid fringe benefits;
- $20,573.00 in liquidated damages; and
- $2,395.00 in attorney's fees and costs.

Therefore, the total amount of recommended damages is $136,119.59.

Plaintiffs' counsel is directed to serve a copy of this Report and Recommendation upon Defendant forthwith by overnight mail and to file proof of service on ECF.

****

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, any objections to this Report and Recommendation must be filed within fourteen (14) days of service. Each party has the right to respond to the other's objections within fourteen (14) days after being served with a copy. *See* Fed. R. Civ. P. 6(a),(e), 72. All objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Denis R. Hurley. Any request for an extension of time for filing objections must be directed to Judge Hurley prior to the expiration of the period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
August 20, 2010

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge